WILLIAM H. CLAPP, Respondent, v. THE TOWN OF ELLINGTON, Appellant.

*Negligence of a commissioner of highways — separate action against one of two towns jointly liable for defects in a bridge — chapter 700 of 1881 — burden of proof — liability of one town created by a commissioner of highways of another — duty of a commissioner.*

The right of action against a town for the negligence of its commissioner of highways is dependent upon the provisions of chapter 700 of the Laws of 1881, and although the duty of taking care of a bridge, the center line of which is the boundary line between two adjacent towns, rests upon the commissioners of highways of both towns, and although the towns are jointly liable for the consequences of the negligence of their commissioners in respect to such bridge, the remedy by action to recover damages for personal injuries sustained by reason of the defective condition of such bridge, is not necessarily against both towns jointly. The action is in its nature for tort, and in such a case the parties chargeable therewith may be sued severally as well as jointly by the party aggrieved

While the *onus* is upon the plaintiff, in an action brought to recover damages for such injuries, to prove the negligence of the defendant's commissioner, and so continues throughout the trial, yet the fact whether or not the defendant's commissioner has done anything under the statute to charge the other town with liability is peculiarly within his knowledge, and if it tends to relieve him from the imputation of negligence furnished by the evidence it is for the defendant to prove it, and not for the plaintiff to prove the negative fact.

A proceeding under the statute, to charge the liability of one town, by the commissioner of highways of the other, in the case provided for, is not necessary, unless the commissioner of such other town in the outset declines to consent to incur its share of the expenses; if he then absolutely refuses to help do it he may be treated as having waived the statutory notice. Neither of the commissioners can justify his omission, at once, in some manner, to warn the public against the dangerous condition of a bridge, if the bridge be so defective as to necessarily require it, provided he has or is chargeable with knowledge or notice that such is its condition.

The commissioner of highways of a town is required to use ordinary care to see that the bridges in his town are reasonably safe for the public use. This duty fairly implies that some attention should within due time be given to each bridge, within his jurisdiction, of sufficient size to be dangerous to travel if in a defective condition.

APPEAL by the defendant, The Town of Ellington, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chautauqua on the 31st day of May, 1890, upon the verdict of a jury rendered after a trial at the Chautauqua Circuit, and also from an order entered in said clerk's office on the 17th day of July, 1894, denying the defendant's motion to set aside the verdict made upon a case containing exceptions.

*William H. Henderson* and *Frank W. Stevens*, for the appellant.

*A. C. Wade*, for the respondent.

BRADLEY, J. :

The purpose of the action was to recover damages for personal injuries suffered by the plaintiff and alleged to have been occasioned by the negligence of the commissioner of highways of the defendant. They resulted from the breaking of the middle beam of a bridge over which the plaintiff was passing with a steam traction engine on the 1st day of September, 1885. The bridge constituted part of the highway on the line between the defendant in the county of Chautauqua and the town of Conewango, in Cattaraugus county, and the center of the bridge was such line. Upon that fact it is contended that this action is not maintainable against the defendant because (1) it does not come within the statute which permits an action against a town ; and (2) that the liability of the defendant is joint only with that of the town of Conewango.

The right of action against a town for the negligence of its com-

missioner of highways is dependent upon the statute which provides that: " The several towns in this State shall be liable to any person suffering the same, for all damages to person or property by reason of defective highways or bridges in such town, in cases in which the commissioner or commissioners of highways of said towns are now by law liable therefor, instead of such commissioner or commissioners of highways." (Laws 1881, chap. 700.) The view urged is that this was not a bridge *in the town,* but is only partly in it. It is true that the bridge was not entirely in the town of Ellington, and the liability of the two towns to maintain it was joint, and each of them was chargeable with one-half of the expense of its maintenance. (Laws 1857, chap. 383, § 1.) We think the bridge was in each town in the sense requisite to bring it within the operation of the act of 1881. And although the duty of taking care of the bridge rested upon the commissioners of both towns, and the towns were jointly liable for the consequences of the negligent default of their commissioners, the remedy by action was not necessarily against both towns jointly. The action is in its nature for tort. In such case parties chargeable may be sued severally as well as jointly by the person aggrieved. No reason appears why that rule is not applicable to actions against towns situated as these were in relation to the bridge. In *Theall* v. *Yonkers* (21 Hun, 265) there was an expression, not necessary to the result, that the defendant was not liable because the accident occurred on the portion of the bridge outside of the city of Yonkers and within the limits of East Chester. That view was not adopted by the court in *Hawxhurst* v. *Mayor* (43 Hun, 589). And by the court in the de artment where the *Theall* case was decided, it was said obiter by Mr. Justice BARNARD, in *Oakley* v. *Town of Mamaroneck* (39 Hun, 448), that " When an accident results from joint negligence all or either of the towns may be sued." This is in accord with the general rule relating to actions at law not on contract. There is also a further answer to the objection in the fact that the non-joinder of the other town is not pleaded as a defense. (*Lyman* v. *County of Hampshire,* 140 Mass. 311; *Sweet* v. *Tuttle,* 14 N. Y. 465.)

Upon the subject of the maintenance of a bridge at the joint expense of two towns, the statute provides that it shall be lawful for the commissioners of either of them, the other refusing

to act, to enter into joint contract which may be enforced against them jointly or severally. (Laws 1857, chap. 383, § 2.) And that if the commissioner of either town shall not within twenty days after written notice from the commissioner of the other, or within a reasonable time thereafter, consent in writing to repair the bridge the commissioner giving the notice may proceed to make the repair and maintain an action to recover the share of the expense chargeable to the town represented by the commissioner so served with notice. (Id. § 3.)

It may be assumed that the commissioner of highways of the defendant was not required alone to expend money to repair the bridge until he had taken some steps to have the commissioner of the town of Conewango join with him in doing it or to charge the latter town with liability to contribute to the expense of reparation. In view of such provisions of the statute it is urged that no negligence is imputable to the defendant's commissioner of highways founded upon any notice of the defective condition of the bridge. with which he may have become chargeable within the time preceding the accident requisite for him to charge the other town with liability as prescribed by the provisions of section 3 before mentioned of the act of 1857, because it does not appear that he had not duly taken the steps to create such liability of the town of Conewango.

The asserted reason for this contention is that the burden is upon the plaintiff to prove that he had not done so. While the *onus* was with the plaintiff to prove negligence of the defendant's commissioner, and so continued throughout the trial, the fact whether or not the defendant's commissioner had done anything under the statute to charge the other town with liability was peculiarily within his knowledge, and if it would tend to relieve him from the imputation furnished by evidence it was for the defendant to prove it and not for the plaintiff to prove the negative of the fact. (1 Greenl. Ev. § 79; *Smith* v. *N. Y. C. R. R. Co.*, 43 Barb. 229.)

The proceeding under the statute to charge liability of one town by the commissioner of highways of the other in the case provided for, is not necessary unless the commissioner of such other town in the outset declines to consent to incur its share of the expense, and if he then absolutely refuses to help do it he may be treated as

having waived the statutory notice.  (*Day* v. *Day*, 94 N. Y. 153.)
Neither of them can justify his omission at once in some manner to
warn the public against the danger if the bridge be so defective as
to necessarily require it, provided he has or is chargeable with
knowledge or notice that such is its condition.

The evidence tends to prove that the needle beam which gave
way was then so decayed as to render the bridge dangerous for
ordinary travel upon it.

The main question of fact litigated upon the trial was whether
the defendant's highway commissioner then in office was chargeable
with negligence in the matter.   He was elected in February before
and had been such commissioner nearly seven months.

The highways in the town aggregate about 100 miles in length
and the bridges are about forty in number, of which that in question
is probably the longest.   Its length was fifty-two feet.   The floor of
the bridge was laid on joists resting on needle beams (of which there
were three) and the abutments at either end of the bridge.   The
needle beams were sustained by means of iron rods supported by
trusses at the sides of the structure.   By the breaking of the mid-
dle needle beam the ends of the joists resting upon it and the plank
necessarily went down, and with them the engine with the plaintiff
upon it.   The evidence on the part of the plaintiff tended to prove
that the needle beam by the process of decay had become somewhat
rotten as early as 1883, which was observable by inspection from
beneath the bridge, and that at the time of the accident there
remained only about an inch and a half in diameter of the needle
beam sound, and that was in the center of it.   This was a beech
stick eight inches square.   The bridge was built in July, 1879,
and it was the judgment of some of the witnesses that beech tim-
ber might be expected to continue sound for from eight to ten
years.   The practical test, as shown in the present case, was that the
soundness of this timber, when cut and applied to the use which it
was, did not survive five years.   It does not appear that the com-
missioner had actual notice of the condition of the bridge, nor does
it appear that he had given it any attention other than to authorize,
on request of his overseer in that road district, new plank to be
put upon it.   He was required to use ordinary care to see that the
bridges in his town were reasonably safe for the public use.   This

duty fairly implies that some attention should, within due time, be given to each bridge of sufficient size to be dangerous to travel if in defective condition. The evidence tends to prove that the process of decay of this beam, which had been going on for about two years, and which rendered it unfit to serve its purpose, was apparent to the observation of any person who was disposed to examine it.

Notwithstanding the very able argument of the defendant's counsel in support of the proposition that the charge of negligence of the commissioner is not supported by the evidence, we think, after a careful examination of the evidence, that the question whether or not the accident may be attributable to the want of reasonable care on the part of the highway commissioner of the defendant, was one of fact for the jury, who, it may be assumed, took into consideration all circumstances appearing by the evidence in reaching the result represented by the verdict.

And as such conclusion was permitted by the evidence, the motion for nonsuit was properly denied. It is not seen that the verdict was so against the preponderance of evidence as fairly to require the direction of a new trial. The question of contributory negligence of the plaintiff was properly and fairly submitted to the jury, and there was no error in the rulings at the trial.

The judgment and order should be affirmed.

DWIGHT, P. J., and WARD, J., concurred; LEWIS, J., not sitting.

Judgment and order affirmed.